In the Matter of Ronald Lee
VANASDALE, Mary Ellen
Vanasdale, Debtors.

Bankruptcy No. 685–00255.

United States Bankruptcy Court,
N.D. Ohio.

Feb. 6, 1987.

JAMES H. WILLIAMS, Bankruptcy
Judge.

By order entered June 5, 1986, 64 B.R. 92, the court disposed, at least in part, of a controversy over the existence of a lien in favor of BancOhio National Bank (BancOhio or Bank) on the proceeds of the 1985 wheat crop of the debtors. The court found that the Bank was indeed secured in a portion of the proceeds of that crop to the exclusion of First National Bank of Shelby, a subsequent lender, and Horn's Crop Services, a supplier of materials and services in connection with planting and maintaining the 1985 crop. Specifically, 69.8% of the crop was determined to be subject to that lien, which is the same percentage of the debtors' total lands in wheat production as were covered by BancOhio's mortgage lien.

The court was unable, on the strength of the record before it, however, fully to resolve the further question of the extent to which the debtors should be entitled to recover their costs in planting, maintaining, enhancing, harvesting and marketing the wheat crop.[1] Accordingly, the parties were given twenty days to reach agreement on the debtors' rights of recovery in this regard, the failure to strike such an accord to result in the scheduling of a further hearing on the matter. Agreement was not achieved and the court scheduled and held a further hearing at which testimony and documentary evidence was received. The court requested the parties to submit Proposed Findings of Fact and Conclusions of Law and they have complied.

A

First, it is necessary to determine the amount of proceeds against which the parties may assert their interests. On even that the parties disagree.

The witness, Floyd J. Reinhart of the Agricultural Stabilization and Conservation Services (ASCS) of the United States Department of Agriculture (USDA) testified as to the following disbursements to the

---

1. The court felt the evidence did support a finding that the debtors' planting costs amounted to $5,240.00 and top dressing costs for the fields subject to BancOhio's lien were $6,282.00. Additional costs for such items as insecticides, harvesting costs, transportation costs to bring the crop to market and any other costs related to marketing were deemed inadequately supported by the evidence.

Vanasdales under what he referred to as the 1985 Grain Reserve Program adminis- tered by ASCS offices in Crawford and Richland Counties, Ohio:[2]

| Date | Amount to Debtors | Type of Payment | ASCS Office Responsible |
|---|---|---|---|
| December 28, 1984 | $4,440.83 | Diversion | Crawford County |
| December 28, 1984 | $9,875.52 | Deficiency | Crawford County |
| December, 1984[3] | $ 354.10 | Diversion | Richland County |
| December, 1984 | $ 417.58 | Deficiency | Richland County |

Additionally, certain sums, as of the date of the initial hearing on December 31, 1985, were due to the debtors as final diversion and deficiency payments but had not as yet been paid. These funds the court under- stands to be available for distribution as shown below:

| Amount | Type of Payment | ASCS Office Responsible |
|---|---|---|
| $4,440.83 | Diversion | Crawford County |
| $9,875.52 | Deficiency | Crawford County |
| $ 296.06 | Diversion | Richland County |
| $ 414.00 | Deficiency | Richland County |

Finally, as indicated in Footnote 2, by virtue of their participation in the Grain Reserve Program, the debtors were eligible for certain loans, again administered by and through the ASCS:

| Date | Gross Amount | Deductions | | Net To Debtors[4] |
|---|---|---|---|---|
| Nov. 6, 1985 | $69,300.51 | $ 7.00 | Loan fee | $62,160.60 |
| | | 7,132.91 | Anderson's, Inc.[5] | |
| Nov. 8, 1985 | $26,441.55 | $ 6.00 | Loan fee | $24,970.40 |
| | | 1,465.15 | Anderson's, Inc. | |

2. According to the unchallenged testimony of Mr. Reinhart, the 1985 Program required the producer to reduce his "established base" (an average of 1983 and 1984 crops planted) on his farm by 30%. In consideration of this reduc- tion, the government agreed to pay a "diversion payment" on part of the reduction. Additional- ly, participating producers were entitled to "de- ficiency payments," a direct subsidy paid to make up what the participants would not re- ceive of the guaranteed price on wheat. Final- ly, producers were entitled to loans under the Program.

3. The day is unclear on the record from which the witness was testifying.

4. Checks were jointly payable to the Vanasdales, Horn's Crop Service and First National Bank of Shelby.

5. Andersons was indicated by the testimony to be an elevator facility which dried and stored the debtors' wheat.

The debtors thus received, as a result of their participation in the 1985 Grain Reserve Program, $15,088.03 in so-called diversion and deficiency payments. They are entitled to receive an additional $15,026.41 in such payments as yet unreleased by USDA. Finally, the debtors have received in loans $87,131.00 [6] which they have presumably shared with First National Bank of Shelby and Horn's Crop Service, the joint payees on the checks disbursing the loan proceeds.

These sums total $117,245.44. BancOhio is entitled to 69.8% of that total, or $81,-837.32, less the crux of the instant motion, the amount the debtors are entitled to retain pursuant to 11 U.S.C. § 506(c) for their costs and efforts in generating these moneys.

## B

It is obvious that it is the debtors' burden to establish their costs for which they seek reimbursement. To do so, they have presented in evidence a publication by the Ohio Department of Agricultural Economics and Rural Sociology as to the so-called "typical" farm custom rates paid in Ohio in 1985. To the extent adopted in the Findings of Fact below, the court accepts this method of fixing the costs in question but uses, instead of the "typical" costs, the lowest of figures shown on the debtors'

Exhibit A–1 as the range for such activities.

## FINDINGS OF FACT

1. The total proceeds from the 1985 wheat crop of the debtors, in which BancOhio has a valid and perfected security interest, amount to $81,837.32.

2. As found by the court in its previous order, $5,240.00 is a reasonable allowance for the cost of planting the 1985 wheat crop on the lands affected by BancOhio's lien. This figure includes the cost of seed, fertilizer, any chemicals applied at the time of planting, ground preparation and the planting operation itself.

3. As likewise found in the June, 1986 order, $6,282.00 is a reasonable allowance for the materials and services involved in applying top dressing to the 1985 wheat crop.

4. The debtors own the land upon which the wheat crop in question, or at least that in which BancOhio claims an interest, was planted, and lands which were set aside as a condition to participation in the 1985 Grain Reserve Program (the "set aside" acres). Rentals paid by the debtors for other ground for other purposes will not support a finding as to the "cost" or "expense" of devoting this land to wheat production.

---

**6.** The court recognizes that this number is seriously at variance with its Finding of Fact No. 10 in its original opinion entered herein on June 5, 1986. Two reasons account for the difference: First, the court views the net amount received by the debtors and their joint payees as the critical sum, exclusive of loan fees charged by the USDA and drying and storage charges paid to Anderson's; second, the court finds that a third loan testified to by the witness Reinhart in the amount of $12,302.50 was actually for wheat grown by one Rodney Cole on lands owned by him and the check was jointly payable to the debtors, First National Bank of Shelby, Horn's Crop Service and Mr. Cole. The record does not explain the debtors' involvement with this amount, but counsel for BancOhio seemed content, in his cross-examination of Mr. Reinhart, to exclude it from amounts the bank claims from the debtors. The court developed its original Finding of Fact No. 10 from a proposed finding submitted by the government and to the extent that the debtors were among several joint payees on the third loan which contributed to a total of $108,044.56 loan to the debtors and others, the original finding remains accurate.

5. The reasonable costs involved in spraying the set aside acres are $2.50 per acre for the 119.4 acres so designated, or $298.50. No evidence was submitted to support the cost of the chemicals used.

6. The reasonable costs of weed control on the set aside acres by chopping on two occasions are $4.00 per acre, or $955.20.

7. Combining costs for 262 acres may be reasonably fixed at $12.00 per acre, or $3,144.00.

8. Trucking costs for transporting the wheat from the field to a dryer are allowable at the rate of four cents per bushel for 18,864 bushels hauled, or $754.56.

9. The cost of drying the same 18,864 bushels to meet the government's moisture limits may be fixed at the rate of eight cents per bushel, or $1,509.12.

10. Storage costs while the wheat was on the debtors' farm may be reasonably fixed at the rate of six cents per bushel as a "take-in" charge and one month's rent for July, 1985 and two cents per bushel for storage during August, 1985, for a total of $1,509.12.

11. Charges rendered by Anderson's, Inc. for storage and mixing were paid by ASCS and the proceeds in dispute are net of such charges.

12. Insufficient evidence is before the court to sustain a finding as to what charges, if any, were incurred for transportation of the wheat to Anderson's, Inc. Similarly, the debtors' claim for "interest on borrowed money" is unsubstantiated.

13. Finally, the right to a "management fee" is asserted by the debtors without, in the court's opinion, sufficient evidence to support their entitlement thereto.

## CONCLUSIONS OF LAW

1. The debtors are entitled, out of the proceeds of their 1985 wheat crop, to their reasonable costs incurred in planting, enhancing, maintaining, harvesting and marketing that crop pursuant to 11 U.S.C. § 506(c).

2. The evidence, as previously found by the court in its order of June 5, 1986, supports an award to the debtors of $11,522.00 for their labor, equipment use and materials in planting and top dressing the 262 acres of wheat on which BancOhio holds a lien.

3. The evidence adduced at the supplemental hearing on the issue of additional costs and expenses incurred by the debtors supports an additional award to the debtors of $7,872.00.

4. BancOhio holds the first and best lien on $81,837.32 of the proceeds received by or owed to the debtors from the sale of their 1985 wheat crop. Of that sum, the debtors are entitled to $19,394.00 as set forth in paragraphs 2 and 3 immediately above.

5. BancOhio is entitled to receive, as a secured creditor, $62,443.32, the balance of the proceeds from the 1985 wheat crop grown on lands affected by the Bank's lien.

6. Such sums as remain unpaid by ASCS offices on account of the debtors' participation in the 1985 Grain Reserve Program should be turned over, forthwith, to BancOhio. The court concludes, based upon the evidence supplied it at the December 31, 1985 hearing, that such unpaid funds total $15,025.41.

7. The balance of funds due BancOhio on account of its lien in the amount of $47,416.91 is recoverable by BancOhio from the First National Bank of Shelby.

8. To the extent that information supplied the court heretofore as to sums being held by any ASCS office on account of the debtors is in error for any reason, the parties will be ordered to adjust their respective positions in order to comply with the monetary findings set forth in paragraphs 3 and 4 of these Conclusions of Law.