**In the Matter of ED WOODS LIVESTOCK, INC., Debtor.**

**Bankruptcy No. BK94–40813.**

United States Bankruptcy Court, D. Nebraska.

Sept. 1, 1994.

Michael R. Snyder, Kearney, NE, for Ed Woods Livestock, Inc., debtor.

Richard K. Lydick, Chapter 12 Trustee, Omaha, NE.

Earl Ahlschwede, Grand Island, NE, for Co-op. Finance Ass'n.

George Vinton, North Platte, NE, for Nebraska State Bank.

David Smith, Lexington, NE, for Esterich, Inc.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

Before the court is the limited question of whether the debtor may limit the interest of Nebraska State Bank of Overton in the debtor's hay and cash collateral of hay to the value of the hay as of the date the bankruptcy case was commenced. This matter arose in connection with a Motion for Authority to Use Cash Collateral (Fil. # 4) and a Motion to Incur Secured Indebtedness (Fil. # 5) filed by the debtor. I have already partially granted both of these Motions (See Fil. # 33). I conclude that the debtor may not, in the context of a motion to use cash collateral, limit the interest of Nebraska State Bank to the value of collateral as of the commencement of the case.

### FINDINGS OF FACT

The bankruptcy debtor in this case is a corporation formed by Ed and Kathleen Woods, who, themselves, are debtors in a separate Chapter 12 proceeding in this court. The corporation was formed as part of their business of growing, baling, and marketing

hay. Nebraska State Bank of Overton ("NSBO") is a secured creditor of the debtor corporation with a lien in a portion of the present and after-acquired growing crops and farm products of the debtor. The hay in which NSBO claims a duly perfected security interest (the "NSBO Hay") does not include all growing hay of the debtor. NSBO asserts it has priority as to the NSBO hay over other parties claiming an interest in the growing and harvested hay of the debtor.

In its Motion for Authority to Use Cash Collateral (Fil. # 4), the debtor proposed to harvest and sell hay, pay NSBO the present value of the NSBO Hay ($45.00 per ton for baled hay, and $11.00 per ton for standing hay), and use any remaining proceeds obtained from the sale, to pay off other creditors claiming a lien in the crops and to continue its business. The debtor estimates the hay can be sold for approximately $100.00 per ton as a result of the bailing and marketing efforts of the debtor, thus yielding a substantial profit over the hay's present value. In its Motion to Incur Secured Indebtedness (Fil. # 5) the debtor proposed to obtain $350,000.00 in credit from Ag Services of America, Inc. ("Ag Services") to operate its business, and grant Ag Services a senior lien on debtor's growing and harvested hay, including hay proceeds, and on various other farming equipment and vehicles of the debtor as security for the loan.

NSBO objects to these motions, asserting, among other things, that 1) the lien of NSBO in the debtor's hay is undersecured and is senior to liens claimed by all other parties; 2) it is not necessary to permit debtor to grant senior liens because the debtor can obtain sufficient funds from the sale of wheat and loans from NSBO to permit debtor to continue its business while the priority of creditors' claims are determined; 3) the $350,000.00 line of credit requested is excessive since the debtor has other sources of cash flow; and 4) the lien of NSBO extends to all of the proceeds obtained from the sale of the NSBO Hay, and can not be limited to the present value of the hay before sale.

In a journal entry dated July 29, 1994, debtor was authorized to complete the necessary paperwork to obtain a $350,000.00 line of credit from Ag Services to grant Ag Services a first priority lien in all the growing crops, farm products, and proceeds thereof. However, the debtor was authorized to immediately borrow only $50,000.00 for use during the next month. The debtor was further authorized to harvest and sell hay, and was ordered to deposit all the proceeds from the sale of all hay in a segregated cash collateral account. The debtor was ordered not to pay any creditors from the cash collateral account except Ag Services in the amount of $50,000.00. (See Fil. # 31). I took under advisement the question of priority of liens between competing creditors in the NSBO hay, and the ability of the debtor to limit the interest of NSBO to the present value of the NSBO hay before sale. I do not have before me sufficient evidence to decide the issue of priority at this time, but will address the ability of the debtor to limit the interest of NSBO.

### DISCUSSION

In essence, the debtor seeks to limit the secured claims of NSBO to the value of collateral as of the date this case was commenced. The debtor thereby hopes to retain the "profit" on the sale, free and clear of NSBO's interest. I conclude that the debtor may not utilize its Motion for Authority to Use Cash Collateral (Fil. # 4) to limit the security interest of NSBO.

The argument asserted by the debtor confuses the requirements for adequate protection for purposes of sale and the use of cash collateral. These requirements should be addressed separately.

### Adequate Protection

Section 363(b)(1) provides that the trustee (or a debtor-in-possession in a Chapter 11 case) may use, sell, or lease property of the bankruptcy estate. 11 U.S.C. § 363(b)(1) (1994). However, § 363 provides that a court shall condition the use, sale, or lease of property by the trustee upon the requirement of adequate protection if so requested by a creditor. 11 U.S.C. § 363(e) (1994). In the present case, the debtor-in-possession seeks to sell hay in which NSBO has a security interest, and NSBO has ob-

jected, requesting adequate protection. In order for the debtor to sell hay free and clear of the lien of NSBO, NSBO must be provided adequate protection respecting its present interest in the hay. The present value of collateral must be protected and the collateral's hypothetical future value is not controlling for adequate protection purposes at the time of sale.

The present interest of NSBO in hay will be adequately protected if NSBO is paid the proceeds of hay in which it holds a duly perfected security interest or if such proceeds are escrowed for its benefit.

In this case the present value of the NSBO Hay is $45.00 per ton for baled hay and $11.00 per ton for standing hay. Therefore, I conclude, consistent with my previous order (Fil. # 33), that the debtor may sell the hay in which NSBO claims an interest if the debtor either pays NSBO the proceeds of sale of the NSBO Hay or escrows such proceeds for the benefit of NSBO.

### Cash Collateral

■ The debtor asserts that the hay, when sold, will produce proceeds in excess of the amount necessary to provide NSBO with adequate protection for purposes of sale. The debtor claims it should be allowed to use this excess amount free and clear of NSBO's interest. I conclude that all of the proceeds received from the sale of NSBO Hay, including amounts in excess of the value of the NSBO Hay on the petition date, constitute cash collateral, and therefore must be impounded to protect the interest of NSBO.

Section 363(a) provides that "cash collateral" includes the "proceeds" of property subject to the pre-petition security agreement, as stated in § 552(b) of the Code. 11 U.S.C. § 363(a) (1994). Section 552(b) provides that a security interest entered pre-petition that includes the proceeds of the property secured continues in proceeds of such property that are acquired after bankruptcy, except to the extent limited by the court after notice and a hearing based on the equities of the case. 11 U.S.C. § 552(b) (1994). The meaning of the term "proceeds" under § 552(b) and § 363(a) has been interpreted to be identical to that under the Uniform Commercial

Code ("UCC") § 9–306. *In re Bumper Sales, Inc.,* 907 F.2d 1430, 1437 (4th Cir. 1990). Section 9–306 of the Nebraska UCC defines "proceeds" as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds ... Money, checks, deposit accounts, and the like are 'cash proceeds'...." Nebraska UCC § 9–306 (Reissue 1992).

All the cash proceeds from the sale of NSBO Hay constitute cash collateral under § 363(a) and the debtor cannot use this cash collateral unless the interest of NSBO is protected. Under the security agreement between the parties NSBO has a security interest in the proceeds of hay. Pursuant to § 552(b), this security interest continues in proceeds acquired after the bankruptcy petition is filed "to the extent provided by such security agreement and by applicable non-bankruptcy law ... except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." See 11 U.S.C. § 552(b) (1994).

The Bankruptcy Code explicitly permits NSBO's security interest in collateral to continue in proceeds. Furthermore, the Code permits that interest in proceeds to be cut off based on the equities of the case. Therefore, I conclude that the debtor may not, as of right, limit the interest of NSBO to the value of collateral as of the petition date.

Evidence presented to the court at the expedited hearing is insufficient to provide a basis for limiting the interest of NSBO under § 552(b) and there was no argument for limiting such interest under § 506(c). A further hearing, if requested, would be necessary on this issue.

The court is aware of and agrees with decisions under § 552(b) limiting the interest of a creditor to the extent of reasonable costs to enhance or maintain the value of collateral, such as the costs of planting, marketing, and harvesting crops. See *Matter of Vanasdale,* 64 B.R. 92, 97 (Bankr.N.D.Ohio 1986); *Matter of Vanasdale,* 71 B.R. 270, 273 (Bankr. N.D.Ohio 1987) (citations omitted). However, the court is unaware of any decisions utilizing § 552(b) to limit the value of a creditor's interest in post-petition proceeds, to the

value of the collateral at the date of bankruptcy. See *Matter of Vanasdale,* 64 B.R. at 97 (discussing legislative history that expenditures could be considered in balancing equities, and further stating that § 552(b) could not be used to limit the value of the creditor's interest to the value of the dormant crop on the date of bankruptcy to deny a creditor's contractual rights in growing crops).

Debtor's position that the interest of NSBO can be limited to the value of collateral on the petition date is inconsistent with Code §§ 552 and 363 which make clear that NSBO's interest in hay extends to all NSBO Hay proceeds.

One additional related point should be addressed. Since I have authorized the debtor to borrow up to $50,000.00 from Ag Services of America, Inc., and to repay said loan from the proceeds of hay sold it is also necessary to protect NSBO from depletion of its cash proceeds due to the repayment of Ag Services. Such adequate protection is provided by the requirement of my previous order that debtor escrow all proceeds of all hay.

IT IS THEREFORE ORDERED, that

1. The debtor may not limit the interest of NSBO to the value of collateral as of the petition date without requesting a subsequent hearing under § 552(b).

2. The debtor may continue to sell hay in which NSBO claims an interest.

3. The debtor shall continue to escrow or pay proceeds of NSBO hay to NSBO.

4. The debtor shall also continue to escrow the proceeds of all other hay so as to adequately protect NSBO respecting the loan repayments to Ag Services of America, Inc.