**In re Robert Warner LADD, Debtor.**

**Charles E. COVEY, Trustee, Plaintiff,**

v.

**IPAVA STATE BANK, Defendant.**

**Bankruptcy No. 88–82587.
Adv. No. 89–8044.**

United States Bankruptcy Court, C.D. Illinois.

Oct. 13, 1989.

Charles E. Covey, Peoria, Ill., trustee.

Ted G. Collins, Lewistown, Ill., for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

In February of 1984 the Debtor executed and delivered to the IPAVA STATE BANK (BANK) a Uniform Commercial Code Financing Statement which described the collateral to the BANK, along with other collateral, as being:

> "crops, growing or to be grown, in Bernadotte Twp, Fulton County, IL".

A box on the Financing Statement was checked which indicated that products of collateral were also covered. In June of 1986 the Debtor gave the BANK another Uniform Commercial Code Financing Statement which described the collateral, along with other collateral as being:

> "all farm crops, growing or to be grown, on parcels of land as described by the attached legal description."

Again, the box indicating products of collateral was checked. On January 11, 1989, a Uniform Commercial Code Continuation Statement was filed extending the Financing Statement filed in February of 1984.

Starting in January of 1988 and extending into July of 1988 the BANK made

several loans to the Debtor. These loans were evidenced by Combined Notes and Security Agreements. All of these Combined Notes and Security Agreements indicated that the collateral for the loans was equipment, farm products and accounts. Some of them further indicated that general intangibles secured some of the loans. One Combined Note and Security Agreement indicated that government payments and PIK certificates and proceeds of PIK certificates also were security. In January of 1988, the Debtor also executed and delivered a U.S. Department of Agriculture ASCS–36 form which assigned to the BANK payments due the Debtor under the Government Feed Grain Program. The first part of the assignment reads as follows:

"The producer (assignor) assigns to the lender the payments due or to become due him/her for the farm under the program and for the year identified above, not to exceed the amount shown above."

The last sentence of the assignment reads as follows:

"The lender agrees to pay over promptly to the producer (or refund to the Government for payment to the producer) any amount by which the payment made to the lender under this assignment exceeds the indebtedness secured by the assignment."

Later in 1988 Congress passed the Disaster Assistance Act of 1988. 7 U.S.C. Section 1421 *et seq.* This Act provides for disaster payments if the farmer's crop is adversely affected by drought, hail, excessive moisture, or related conditions in 1988. The Debtor's farming operation was adversely affected by drought during the year 1988, resulting in the Debtor being entitled to receive disaster payments in the amount of $8,439.00. Because of the assignment, these payments were made to the BANK.

After the Debtor filed a Chapter 7 proceeding, his Trustee in Bankruptcy brought this preference action to recover these payments. It is the Trustee's position that the Financing Statement is defective, in that the disaster payments are general intangibles and the Financing Statement does not refer to general intangibles. It is the Trustee's further position that the Financing Statement was improperly filed with the Recorder of Deeds, because the government payments are general intangibles which require filing with the Secretary of State of the State of Illinois.

In response, the BANK makes two arguments. First, that pursuant to the assignment there was an outright assignment of the disaster payments rather than the granting of security interest which required the filing of a financing statement, and, second, even if the transaction did involve the granting of security interest that the disaster payments are proceeds of crops. Therefore there was no need to describe general intangibles in the financing statement, nor was there any need to file the financing statement with the Secretary of State's Office.

The first issue before the Court is whether the assignment was an outright transfer of all rights to the disaster payments to the BANK, or was it merely the granting of a security interest. The Trustee argues that it was the latter, because if the loans were repaid by other sources the disaster payments would have been turned over to the Debtor. In response, the BANK argues that as it already had the security interest, it would have been meaningless to take an assignment unless it meant something more—i.e. an outright assignment. The BANK relies on this Court's previous decision in *In re Blackert,* 95 B.R. 972 (Bkrtcy. C.D.Ill.1989).

■ This Court agrees with the Trustee that the transaction constituted the granting of a security interest and not an outright assignment. First, the testimony of both the BANK officer and the Debtor was quite clear that if the loan had been repaid through other sources the Debtor would have been entitled to the disaster payments. Furthermore, the Debtor testified that when he signed up for the disaster payments he assumed the money would go to the BANK, not because they were necessarily legally entitled to it, but because they were just like any other source of

income which would have gone to the BANK to repay the loans. Second, pursuant to federal statute, the ASCS office would not recognize an assignment unless filed at that office and the ASCS office only has a single form of assignment.[1] That form contains language which indicates both an outright assignment and that there is a secured transaction involved. In practice, the ASCS office uses the form for either situation. Therefore, in order to comply with the federal statute and be on record so as to be entitled to claim the disaster payments, the BANK used the only form that was available to it. So the BANK's argument is without merit. All the BANK did was to utilize the only form available to take the additional step necessary to assure that it received payment from the ASCS office.

The BANK's reliance on this Court's decision in *In re Blackert, supra,* is misplaced. In that case, the bank and its borrower were engaged in a conveyance in lieu of foreclosure. Under the circumstances of that case the assignment was intended to be outright as part of the borrower's liquidation. Those facts are not present in this case and a similar result is not justified.

Finally, the BANK's position must fail, because as a matter of contract law, it cannot have a transfer of a right not in existence at the time of the assignment. *Litwin v. Timbercrest Estates, Inc.,* 37 Ill. App.3d 956, 347 N.E.2d 378 (1st Dist.1976). In January of 1988, when the assignment was given, the Disaster Assistance Act of 1988 had not been passed. Therefore, the parties could not have and did not contemplate it as being subject to an outright assignment. Although it is possible under the Commercial Code for a creditor to take a security interest before a debtor acquires rights in property, that is not the case under general contract law.

■ The next issue before the Court is whether the disaster payments are proceeds of crops and thereby subject to the Financing Statement filed by the BANK. This Court is of the opinion that they are not. Section 9–306 of the Uniform Commercial Code defines proceeds as being "whatever is received upon the sale, exchange, collection or other disposition of the collateral." Ill.Rev.Stat.1987, Ch. 26, para. 9–306. The issue of whether government payments are proceeds under Section 9–306 was considered by this Court in *In re Kruger,* 78 B.R. 538 (Bkrtcy.C.D.Ill.1987). In that decision, this Court analyzed most of the cases that had been decided at that point in time and refused to establish a single result for all government payments. This Court indicated that it felt it was necessary to examine each particular government program to determine the nature of the subsidy payment and then to determine if payments of that nature fell within the definition of the term proceeds. Based upon the decision in *In re Schmaling,* 783 F.2d 680 (7th Cir.1986), this Court held that in order for government payments to be proceeds within the definition of Section 9–306, that three conditions must be present. First, a crop must be planted, second there must be a disposition of the crop, and third the entitlement which the secured creditor is claiming must have been received in connection with that disposition. This Court went on to hold that deficiency payments were not proceeds because although the crop was planted, the deficiency payment was received without a disposition of the crop and the payment was not received in connection with that disposition.

This Court now turns its attention to the issue of whether disaster payments under the Disaster Assistance Act of 1988 can be classified as proceeds. This Court is of the opinion that they cannot be so classified. These payments are made to compensate a farmer for any deficiency brought about by drought, hail, excessive moisture, or related conditions in 1988. The payment is based upon historical yields for the acreage involved times a particular percentage. A

---

1. See 16 U.S.C. Section 590 and the regulation promulgated pursuant thereto, (7 C.F.R. Section 709).

farmer can have a bad year (because as in this case the drought of 1988) and still receive the payment even though the crop is never harvested, or, if harvested, is kept by the farmer. The payment is calculated on an estimated, not on actual, yield. There is no requirement that a farmer sell or otherwise dispose of his crop in order to be entitled to a disaster payment. But there has to be a sale, exchange, collection or other disposition in order for something to be received in its place and thereby fall within the classification of proceeds. In this case the disaster payments would have been received regardless of whether there was a sale or other disposition. They were not received as a substitute for a disposed-of crop. Therefore, this Court concludes that the disaster payments are not proceeds, and the Financing Statement was defective in that it failed to describe the government disaster payments either specifically or by claiming general intangibles, and was filed in the wrong office.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion filed this day:

IT IS, THEREFORE, ORDERED that the Trustee be and is hereby entitled to recover the preferential payment of $8,439.00 from the Defendant, IPAVA STATE BANK.