**In re VERMONT KNITTING COMPANY, INC., Debtor.**

**Douglas J. WOLINSKY, Esq., Trustee,**

v.

**VERMONT FEDERAL BANK, FSB, Defendant.**

Bankruptcy No. 87–00274.
Adv. No. 89–00050.

United States Bankruptcy Court, D. Vermont.

Feb. 27, 1990.

N. Williams, of Gravel & Shea, Burlington, Vt., for defendant, Vermont Federal Bank, FSB (Vermont Federal).

Douglas J. Wolinsky, of Saxer, Anderson, Wolinsky & Sunshine, Burlington, Vt., Trustee.

## MEMORANDUM OF DECISION DETERMINING EXTENT OF LIEN

FRANCIS G. CONRAD, Bankruptcy Judge.

Trustee sues to determine whether Vermont Federal's pre-petition perfected security interest in all of Debtor's equipment, machinery and proceeds reaches a post-petition nonrefundable good faith deposit that was forfeited by a bidder of Debtor's equipment and machinery at a sale solicited by the Trustee.[1] We hold the forfeited good faith deposit belongs to Debtor's Estate because it is not subject to Vermont Federal's pre-petition security interest as it is not "proceeds" within Vermont's Uniform Commercial Code (UCC).

The parties stipulated to all material facts. We pen only those facts necessary for this decision.

Vermont Federal holds a valid pre-petition security interest in all of Debtor's knitting machinery, equipment and their proceeds (collateral).

Following Debtor's conversion to a case under Chapter 7, 11 U.S.C. §§ 101 *et seq.*, Trustee obtained authorization to solicit bids for the purchase of the collateral. Trustee accepted a bid of $125,000.00 from a bidder who had tendered the required nonrefundable $11,000.00 deposit (deposit). A closing date was set. The bidder failed to appear at the closing despite Trustee's extension of time. Upon query by the Trustee, the bidder explained his perception that the market value of the collateral had sharply declined after his bid was submitted. Thus, it was more economical to forfeit his deposit than complete the purchase. Trustee declared the bid in default. The deposit was forfeited. The majority of the collateral was later sold for $94,150.00.

The Trustee sued for a determination under 11 U.S.C. § 506(a) [2] and § 552 *infra*, that Vermont Federal's valid pre-petition security interest does not extend to the post-petition deposit. Trustee claims the deposit is not "proceeds" within the definition of Vermont's UCC because the collateral was not "sold, exchanged, collected or otherwise disposed of," Title 9A Vt.Stat. Ann. § 9–306(1) *infra*, and if the deposit is not "proceeds," the deposit is property of Debtor's Estate under 11 U.S.C. § 541(a),[3] concludes Trustee.

Vermont Federal claims the deposit is theirs despite the fact that the sale was aborted, and offers that no sale, transfer or

1. The parties agreed and we determine we have jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and the general reference to this Court. It is a 28 U.S.C. § 157(b)(2)(K) core matter. This Memorandum of Decision constitutes findings of facts and conclusions of law under F.R.Civ.P. Rule 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. 11 U.S.C. § 506, **Determination of secured status,** provides in pertinent parts under subpart (a):
   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. *Id.*

3. 11 U.S.C. § 541(a)(1) **Property of the estate,** provides: (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
   (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. *Id.*

exchange need actually occur under Vermont's UCC's § 9–306(1) to make this their "proceeds." Instead, Vermont Federal argues the deposit constitutes a "constructive disposition" of its collateral and, as such, falls within the § 9–306(1)'s *"whatever is received when collateral ... is sold, exchanged, collected or otherwise disposed of."* (Emphasis added). Vermont Federal's contribution to the parties' Preliminary Pre-trial Statement proffers:

> The bid deposit thus reflected partial consideration for a risk the seller assumed: a sharp decline in the market for knitting equipment (collateral) between the bid date and sale date. In fact, as matters turned out, the payment was not sufficient to compensate for this risk, since the Trustee wound up selling the machinery and equipment (collateral) for less than the bid price minus the $11,000 deposit. In these circumstances, Vermont Federal, as a perfected secured creditor, should be entitled to the deposit amount.

"Preliminary Pre–Trial Statement," Schedule A, page 3 (parentheticals supplied).

In Bankruptcy, the post-petition effect of a pre-petition security interest is governed by 11 U.S.C. § 552. 11 U.S.C. § 552, **Post-petition effect of security interest**, provides:

> (a) **Except as provided in subsection (b) of this section,** property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
> (b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, *if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such securi-*

*ty agreement extends to property of the debtor acquired before the commencement of the case and to proceeds,* product, offspring, rents, or profits of such property, *then such security interest extends to such proceeds,* products, offspring, rents, or profits *acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law,* except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

*Id.,* (emphasis supplied).

The Senate Report (Reform Act of 1978) of § 552's Legislative History explains "[s]ubsection (b) provides an important exception consistent with the (UCC). If the security agreement[4] extends to proceeds ... then the proceeds would continue to be subject to the security interest pursuant to the terms of the security agreement and provisions of applicable law...." S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877, *reprinted in 4 Norton Bankruptcy Law and Practice,* pages 500–501; (footnote ours; brackets supplied).

The House Report (Reform Act of 1978) of § 552's Legislative History expresses that "proceeds" "is not limited to the technical definition of that term in the UCC, but covers any property into which property subject to the security interest[5] is converted." H.R.Rep. No. 595, 95th Cong., 1st Sess. 376–377 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6332, 6333 *reprinted in 4 Norton Bankruptcy Law and Practice,* pages 500–501 (emphasis and footnote ours).

While the House Report *supra,* suggests an expansive definition for the term "pro-

---

4. 11 U.S.C. § 101(44) provides: " 'security agreement' means agreement that creates or provides for a security interest."

5. The House Report (Reform Act of 1978) of § 552's Legislative History suggests the definition of the term "security interest" is not limited to any particular State's UCC, but also "applies to all security interests as defined in section 101 of the bankruptcy code, not only to UCC securi-

ty interests." *Id. Accord,* Senate Report (Reform Act of 1978) ("It applies to all security interests as defined in section 101(37) (presently § 101(45)) of the bankruptcy code, not only to UCC security interests." S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5877). 11 USC § 101(45) provides: " 'security interest' means lien created by agreement."

ceeds" that may reach beyond applicable UCC, it also expresses a requirement that the subject property be "converted." The "American Heritage Dictionary" defines "convert" in part as: "To change into another form, substance, state, or product; transform: *convert water into ice.*" *Id.*, (2d Ed.1982) (emphasis in original). Thus, it appears § 552's Legislative History supports the Trustee's position that Vermont Federal's collateral must "change" into another form before it will become "proceeds."

We continue our inquiry of the definition of "proceeds," in the context of § 552(b)'s post-petition effect of a pre-petition security interest, under State Law as required by § 552(b)'s *"the extent provided by such security agreement and by applicable nonbankruptcy law."* *Id.*, (emphasis ours).

■ We know that Vermont Federal's security agreement extends to proceeds. This fact is not in dispute. What remains for our determination is the extent of the exception under § 552(b)'s "applicable nonbankruptcy law." Our query then is: Does Vermont's UCC recognize as "proceeds" a forfeited deposit from an aborted Trustee's sale? Applicable nonbankruptcy law is 9A Vt.Stat.Ann. § 9–306.

9A Vt.Stat.Ann. § 9–306 "'Proceeds'; secured party's rights on disposition of collateral," provides in pertinent parts:

(1) **'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of.** The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are 'cash proceeds'. All other proceeds are 'non-cash proceeds'.

(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collateral received by the debtor.

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless

(a) a filed financing statement covering the original collateral also covers proceeds; or

(b) the security interest in the proceeds is perfected before the expiration of the ten day period.

*Id.*, (emphasis supplied).

9A Vt.Stat.Ann. § 9–105(3) **Definitions and index of definitions,** requires we defer to Vermont's Article 2 **Sales** for the definition of "sale" for Article 9 **Secured Transactions** purposes. 9A Vt.Stat.Ann. § 2–106(1) provides:

(1) ... A 'sale' consists in the passing of title from the seller to the buyer for a price (§ 2–401). A 'present sale' means a sale which is accomplished by the making of the contract.

*Id. See, Cross–Abbott Company v. Howard's, Inc.*, 124 Vt. 439, 442, 207 A.2d 134 (1965) ("A sale is a contract whereby the ownership of property is transferred from one person to another for a consideration ... A sale is defined in the Uniform Sales Act, 9 V.S.A. § 1501(b), to be—'A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called a price.'" (citations omitted)).

9A Vt.Stat.Ann. § 2–401 **Passing of title; reservation for security; limited application of this section,** provides:

Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provisions refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply:

(1) Title to goods cannot pass under a contract for sale prior to their identifi-

cation to the contract (§ 2–501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the article on Secured Transactions (article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place....

*Id.*

In turn, 9A Vt.Stat.Ann. § 2–501, **Insurable interest in goods; manner of identification of goods,** provides:

(1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

   (a) When the contract is made if it is for sale of goods already existing and identified....

(2) The seller retains an insurable interest in goods so long as title to or any security interest in the goods remains in him and where the identification is by the seller alone he may until default or insolvency or notification to the buyer that the identification is final substitute other goods for those identified.

*Id.*

Anderson has this observation with respect to the UCC's use of the phrase "sold, exchanged, collected or otherwise disposed of:"

### § 9–306:12. Necessity of sale.

In order for the sale provisions of UCC § 9–306 to be operative, it is necessary that there be a transaction with respect to the collateral that is a 'sale, exchange, collection, or other disposition of the collateral or proceeds.' Whether there has been a sale for the purpose of Article 9 is determined by the definition of sale in Article 2. The Code (UCC) does not define the term 'exchange' and therefore its prior meaning applies under which the difference between it and a sale is 'purely technical.'

.   .   .   .   .

### § 9–306:13. Definition of Proceeds.

The term 'proceeds' is to be given a liberal construction. It includes anything and everything that is received when collateral or proceeds of collateral are sold or disposed of in any way, and goods that are purchased with the original proceeds from the collateral.

9 *Anderson on the Uniform Commercial Code,* § 9–306:12, pages 142–143 (3d Ed. Supp.1989) (footnotes omitted) (parentheticals supplied).

The terms of the Trustee's "Request for Bids" contained the contractual condition precedent that to be a successful bidder, the bidder must tender a nonrefundable deposit and consummate the transaction by taking physical possession of the goods:

3. All bids must be accompanied by certified funds, equal to 10 per cent of the total amount bid, made payable to the Trustee. To the extent that any particular bid is accepted by the Trustee, the deposit given in connection with it will become nonrefundable, subject only to the Trustee's ability to convey title, as set forth below. Successful bidders must consummate their transaction, and remove their purchased assets from the Trustee's custody, at the earlier to occur of 4:00 p.m. on December 8, 1988, or 4:00 p.m. on the date of confirmation of the sale.

Parties' "Stipulation of Facts," Exhibit A, page 1.

Factually, the intended bidder did not "consummate" the bid because, in addition to the failure of tender of balance due, the collateral was never taken into possession by the bidder nor removed from the Trustee's custody. A "sale" never occurred within either the meaning of the "Request for Bids," or within the meaning of Vermont's UCC.

Lastly, we are asked to treat this aborted transaction and its resultant nonrefundable deposit as within the meaning of 9–306(1)'s "whatever is received when collateral or proceeds ... other disposition."

Trustee advocates the application of the *ejusdem generis* doctrine to require "other disposition" must achieve a transfer of property. The Vermont Supreme Court has explained the familiar application of the *ejusdem generis* doctrine:

> The rule of *ejusdem generis* is frequently applied by the courts in construing an enactment. When words of a statute bearing a specific description are followed by words of more general import, the sense of the adjective first used is applied to the words that follow. The latter words are held to include only those things similar in character to those specifically defined.

*Kalakowski v. John A. Russell Corporation*, 137 Vt. 219, 224, 401 A.2d 906 (1979) citing, *Rutland Cable T.V., Inc. v. City of Rutland*, 122 Vt. 1, 4, 163 A.2d 117, 119 (1960).

Anderson has this to say on the application of the *ejusdem generis* doctrine to "other disposition" in 9–306(1):

> The term 'other disposition' is not defined by the Code (UCC) but as used in UCC § 9–306 is to be interpreted according to the rule of ejusdem generis and thus refers to a transaction of the same general type as a sale or exchange and must as a minimum effect a transfer of property....

9 *Anderson on the Uniform Commercial Code*, § 9–306:12, pages 142 (3d Ed.Supp. 1989) (footnote omitted).

We conclude Vermont's UCC does not extend the term "proceeds" to include a forfeited deposit from an aborted sale because the collateral was not "sold, exchanged, collected or otherwise disposed of."

▮ We reach this conclusion by the application of the doctrine of *ejusdem generis* to phrase "otherwise disposed of" in § 9–306(1)'s "whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." The application of this doctrine requires there be a transfer or substitution of collateral for other property. *See, Weisbart & Co. v. First National Bank of Dalhart, Texas*, 568 F.2d 391, 395 (5th Cir.1978) (applied *ejusdem generis* doctrine to the UCC's term "other disposition" and held this term must result in a "transfer of property" to be of the same type as a "sale or exchange"). Similarly, Vermont Federal's collateral was not "converted," within the meaning of the House Report *supra*, rather it remained intact.

Upon the failure of the would be bidder to consummate the terms of the bid, no estate property was transferred from Trustee to the intended bidder and thus, there was no disposition or substitution of Vermont's Federal's collateral under Vermont's UCC § 9–306(1). The deposit belongs to the Debtor's Estate.

An appropriate Order will be entered.