LEO R. NEWCOMBE *et al.*, Plaintiffs-Appellants, v. MYSORE S. SUNDARA *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—94—3427

Opinion filed August 8, 1995.

Hedberg, Tobin, Flaherty & Whalen, of Chicago (Edward J. Whalen and Paul E. Flaherty, of counsel), for appellants.

Shefsky & Froelich, Ltd., of Chicago (Barry B. Gross and Christopher D. Oakes, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs Leo R. Newcombe and Ann L. Newcombe brought this action seeking a determination that they held a perfected security interest in several limited partnerships, and to order their foreclosure and sale. They appeal from the circuit court's order granting defendants' motion for a "directed finding,"[1] questioning whether the court's decision is against the manifest weight of the evidence.

---

[1] Although the court ruled on defendants' motion for directed finding, we have noted before that the Code of Civil Procedure contains no provision which allows a party to bring a motion for a directed verdict or a "directed finding" in a bench trial. (See *Eskridge v. Farmers New World Life Insurance Co.* (1993), 250 Ill. App. 3d 603, 608 n.4, 621 N.E.2d 164, 168 n.4; *People v. Davilla* (1992), 236 Ill. App. 3d 367, 373 n.3, 603 N.E.2d 666, 669 n.3.) The

Defendant Mysore Sundara[2] purchased limited partnership interests in 14 East Elm Limited Partnership[3], Elmhurst Terrace Limited Partnership, Century Apartments Limited Partnership and 3419 Harlem Limited Partnership from defendant Inland Real Estate Corporation, now known as Intervest Midwest Real Estate Corporation (IMREC), the corporate general partner. IMREC did not issue certificates to the limited partners, but maintained manual and computer records indicating the number of "units" purchased by each investor. Each limited partner signed an agreement which contained the following provision restricting transfer of their interests:

> "Section 15.1. A Limited Partner may not at any time assign or transfer his Units without prior approval by the Corporate General Partner, which approval shall be in its sole discretion.
>
> Section 15.2. No assignment or transfer pursuant to Article 15 shall be deemed effective, unless and until the assignee shall execute a written instrument in form reasonably satisfactory to counsel for the Partnership agreeing to be bound by all of the terms and provisions of this Agreement and all amendments and supplements thereto, to the same extent and on the same terms as the other Limited Partners. In addition, no such assignee shall become a substituted Limited Partner without the approval of the Corporate General Partner, the granting or denial of which approval shall be in the sole discretion of the Corporate General Partner.
>
> Section 15.3. Any person admitted to the Partnership as a substituted Limited Partner shall be subject to and bound by all the provisions of this Agreement as if originally a party to this Agreement."

Sundara borrowed money from Inland Mortgage Corporation (IMC), an affiliate of IMREC, in order to make installment payments due on the balance of the purchase price of each partnership and signed a promissory note and security agreement, pledging his partnership interests to IMC as security for each loan. IMC filed Uniform Commercial Code (UCC) financing statements with the Illinois Secretary of State, listing Sundara's partnerships as collateral; Sundara's partnership records also noted the financing.

---

proper procedure is to file a motion pursuant to section 2—1110 of the Code of Civil Procedure, entitled "Motion in non-jury case to find for defendant at close of plaintiff's evidence." 735 ILCS 5/2—1110 (West 1992).

[2]Sundara is not a party to this appeal.

[3]14 West Elm Limited Partnership was incorrectly sued as 14 East Elm Limited Partnership.

A limited partner could obtain a loan from a lender not affiliated with defendants and pledge his or her partnership interest as security for the loan, if the lender provided IMREC a copy of the collateral assignment. IMREC would not acknowledge the assignment unless it contained language that the lender agreed to be bound by the rules and regulations of the limited partnership agreement. In the event that a limited partner pledged his partnership interest and sought to pledge it again to a second party, IMREC would notify the second party of the first pledge but refused to acknowledge a second pledge unless that lender agreed to a second position in the collateral.

In October 1987, the Newcombes invested $200,000 with Sundara, who, in turn, gave them two $100,000 promissory notes. On February 29, 1988, Sundara executed an agreement granting Leo Newcombe a security interest in the four previously mentioned partnerships as well as the Old Orchard Limited Partnership. On March 2, 1988, Newcombe filed a UCC financing statement with the Illinois Secretary of State describing the secured collateral as the five limited partnership agreements.

On March 11, 1988, the Newcombes' attorney wrote a letter to IMREC notifying it of his clients' security interest in the limited partnerships. IMREC denied receiving the letter; it had moved its office in June 1987, after giving written notification to all the limited partners. Subsequently, Sundara telephoned Newcombe stating that he had "made a mistake" and claiming that IMREC was pressuring him to get the limited partnership agreements back because they should never have been assigned.

In September 1988, Sundara sold his limited partnership interests to Inland Real Estate Investment Corporation (IREIC) for $304,275.23. Sundara received $111,335.42 from the total purchase price; IMC and the partnerships received the remaining amount. IREIC did not conduct a UCC search prior to purchasing Sundara's interests because it was aware that IMC had a security interest. IREIC did check Sundara's investment files; only the IMC pledges were noted there.

In March 1989, IMREC first learned of the Newcombes' purported security interest when it received a second letter from the Newcombes' attorney. The Newcombes then filed suit to foreclose their security interests. At the close of plaintiffs' evidence, the circuit court granted defendants' motion for a finding in their favor. Plaintiffs timely filed this appeal.

Plaintiffs contend that the limited partnerships are "general intangibles" under article 9 of the Illinois UCC (810 ILCS 5/9—101 *et*

*seq.* (West 1992)) rather than "uncertificated securities" under article 8 (810 ILCS 5/8—101 *et seq.* (West 1992)), and that they perfected their security interest by filing a financing statement with the Illinois Secretary of State. They also claim that since the partnerships are "general intangibles," the restriction on transfer provision contained in each agreement is ineffective in light of section 9—318(4) of the Illinois UCC (810 ILCS 5/9—318(4) (West 1992)), which prohibits contractual restrictions on the creation of a security interest.

Defendants counter that there are several independent grounds to affirm the circuit court's decision: plaintiffs could not obtain a security interest in the limited partnerships without IMREC's prior approval, regardless of whether the interests are securities or intangibles; as uncertificated securities, plaintiffs' interests are unenforceable because they failed to register them and were precluded from registering them on IMREC's books; and plaintiffs never obtained an enforceable security interest because the security agreement signed by Sundara contained an insufficient description of the collateral.

On review, this court must uphold the circuit court's resolution of defendants' motion for judgment in their favor at the close of plaintiffs' case in a nonjury civil action unless the decision is against the manifest weight of the evidence. (*Rohter v. Passarella* (1993), 246 Ill. App. 3d 860, 865, 617 N.E.2d 46.) A finding is contrary to the manifest weight of the evidence only when an opposite conclusion is clearly evident or the finding is palpably erroneous. *Rohter*, 246 Ill. App. 3d at 866.

■ The threshold issue is whether a limited partnership interest is a "general intangible" as defined by article 9 of the Illinois UCC or an "uncertificated security" under article 8. The Revised Uniform Limited Partnership Act defines a partnership interest as *personal property.* (805 ILCS 210/701 (West 1992).) Section 9—106 of the Illinois UCC defines "general intangibles" as "*any personal property* (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." (Emphasis added.) (810 ILCS 5/9—106 (West 1992).) To perfect a security interest under article 9, a financing statement usually must be filed. (810 ILCS 5/9—302 (West 1992).) Although no Illinois case has decided this precise issue, we conclude, from the foregoing statutory definitions, that limited partnership interests are general intangibles governed by Illinois UCC article 9 for purposes of perfecting a security interest since they are defined as personal property.

Defendants insist, however, that article 8 governs the enforce-

ability of plaintiffs' purported security interests because the limited partnerships are "uncertificated securities" and that plaintiffs failed to perfect their security interests under article 8 because they never registered them on IMREC's books. Defendants further note that because article 8 permits only one registered pledge of an uncertificated security, the pledge to IMC bars plaintiffs from perfecting their security interests.

Illinois UCC section 8—102(1)(b) defines an "uncertificated security" as follows:

> "(b) An 'uncertificated security' is a share, participation, or other interest in property or an enterprise of the issuer or an obligation of the issuer which is
>
> (i) not represented by an instrument and the transfer of which is registered upon books maintained for that purpose by or on behalf of the issuer;
>
> (ii) of a *type commonly dealt in on securities exchanges or markets*; and
>
> (iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations." (Emphasis added.) (810 ILCS 5/8—102(1)(b) (West 1992).)

The comments to this section state in part:

> "Interests such as the stock of closely-held corporations, although they are not actually traded upon securities exchanges, are intended to be included within the definitions of both certificated and uncertificated securities by the inclusion of interests 'of a type' commonly traded in those markets." (810 ILCS Ann. 5/8—102 Uniform Commercial Code Comment 2, at 143 (Smith-Hurd 1992).)

The comments also note:

> "At the core is the notion that a security is a share or participation in an enterprise or an obligation that is of a type commonly traded in organized markets for such interests or is commonly recognized as a medium for investment. *** It is believed that the definition will cover anything which securities markets, including not only the organized exchanges but as well the 'over-the-counter' markets, are likely to regard as *suitable for trading*." (Emphasis added.) 810 ILCS Ann. 5/8—102 Uniform Commercial Code Comment 2, at 142 (Smith-Hurd 1992).

In *Motobecane America, Ltd. v. Patrick Petroleum Co.* (E.D. Mich. 1985), 600 F. Supp. 1419, the court held that a limited partnership interest was a contract right and not a "security" as defined by article 8. In *In re Bragiel* (N.D. Ill. 1993), 151 Bankr. 186, the court held that shares of stock in an Illinois professional corporation are not "of a type" commonly traded and, therefore, article 9, not article 8, governs perfection of a security interest in the pledged shares.

■ In the case at bar, defendants' argument that limited partnership interests are "uncertificated securities" governed by article 8 is without precedent. They are not "of a type commonly traded in organized markets" nor would they be regarded as "suitable for trading." Significantly, defendants recognized this fact themselves in a letter to Sundara's receiver, which states, in pertinent part, as follows:

> "As you probably know, *units in private placement partnerships are not interests of the kind which are regularly traded in a recognized market,* such as the New York or Midwest Stock Exchange, and hence no market quotes are available or obtainable to determine value." (Emphasis added.)

Accordingly, we hold that limited partnership interests are "general intangibles" governed by article 9 of the commercial code rather than investment securities under article 8 for purposes of perfecting a security interest.

■ Since article 9 applies, we next consider whether the restriction on transfer provisions contained in the partnership agreements are prohibited by section 9—318(4) of the Illinois UCC. That section provides:

> "A term in any contract *between an account debtor and an assignor* is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest." (Emphasis added.) (810 ILCS 5/9—318(4) (West 1992).)

The purpose of this section is to deny "effectiveness to contractual terms prohibiting assignment of sums due and to become due under contracts of sale, construction contracts and the like." (810 ILCS Ann. 5/9—318 Uniform Commercial Code Comment 4, at 452 (Smith-Hurd 1992).) The provision pertains to contracts between an account debtor and an assignor; an "account debtor" is defined as "the person who is obligated on an account, chattel paper or general intangible." 810 ILCS 5/9—105(1)(a) (West 1992).

■ In the instant case, plaintiffs have failed to present any authority that a limited partnership automatically makes the general partner an "account debtor" to the limited partners. Plaintiffs suggest IMREC, the general partner, is an account debtor because it owed "numerous obligations" to the limited partners. The fact that a general partner owes the partnership certain duties, however, does not transform the partner into an "account debtor" as that term is defined by the commercial code. The limited partnership agreements do not prohibit the assignment of sums due and, therefore, do not

create the type of relationship between the parties that would implicate section 9—318(4).

The cases plaintiff relies upon are distinguishable because they involved assignments of sums and did not invalidate restrictions on the creation of security interests in the partnerships themselves. See *Home Federal Savings & Loan Association of Grand Island v. McDermott & Miller* (1989), 234 Neb. 11, 449 N.W.2d 12 (section 9—318(4) barred term restricting pledge of contract receivables); *In re Charter First Mortgage, Inc.* (Bankr. D. Or. 1988), 7 U.C.C. Rep. Serv. 2d (Callaghan) 1644 (section 9—318(4) not at issue in assignment of proceeds from sale of partnership assets); *City of North Miami v. American Fidelity Fire Insurance Co.* (Fla. Dist. Ct. App. 1987), 505 So. 2d 511 (assignment of accounts receivable); *Union Investment, Inc. v. Midland-Guardian Co.* (1986), 30 Ohio App. 3d 59, 506 N.E.2d 271 (assignment of promissory note).

■ Plaintiffs next charge that the plain language of article 15 of the limited partnership agreement restricts the outright assignment or transfer of a partner's interest but does not expressly prohibit the creation of a security interest. An assignment of an interest occurs when there is a transfer of some identifiable property, claim or right from the assignor to the assignee. (*Bishop v. Village of Brookfield* (1981), 99 Ill. App. 3d 483, 490, 425 N.E.2d 1113.) The assignment operates to transfer to the assignee all of the rights, title or interest of the assignor in the thing assigned. *Bishop*, 99 Ill. App. 3d at 490.

Although the limited partnership agreement does not explicitly prohibit the creation of a security interest, a fair reading of article 15 as well as the evidence before the circuit court indicates that the limited partners could not transfer *any* interest, including pledging their interests as security for a debt, without the consent of the general partner. Section 15.1 prohibits the limited partners from assigning or transferring their partnership interests without the general partner's approval. Section 15.2 forbids any assignment unless the assignee agrees to be bound by the partnership agreement and precludes the assignee from becoming a substituted limited partner without the general partner's approval.

The evidence at trial demonstrated that IMREC would not approve a collateral assignment from a limited partner to a third-party lender until the lender provided a copy of the assignment and agreed to be bound by the rules and regulations of the partnership. IMREC also refused to acknowledge a second pledge unless the lender agreed to a second position in the collateral. Finally, the security agreement at issue specifically states that Sundara "*assigns, transfers* and grants to Leo R. Newcombe *** a security interest" in the limited partner-

ships. (Emphasis added.) There was sufficient evidence for the circuit court to have concluded that article 15 precluded Sundara's assignment of a security interest because he never obtained IMREC's consent and plaintiffs never provided IMREC a copy of the assignment with language agreeing to be bound by the partnerships' rules. The circuit court's finding that the partnership agreements precluded the assignment of a security interest is not "palpably erroneous."

Plaintiffs propose that the Uniform Limited Partnership Act (ULPA), which was in effect when the partnerships were created, specifically allowed a limited partner to assign his interest. Here, the limited partnership agreements merely subject assignments or transfers of a partner's interest to the requirement of securing IMREC's prior approval. The agreements do not absolutely prohibit assignments. Accordingly, there is no conflict between the limited partnership agreements and the ULPA.

The circuit court's grant of defendants' motion for a finding at the close of plaintiffs' case is not against the manifest weight of the evidence and, accordingly, must be affirmed.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.