**In re Allen M. MINTZ, Debtor.**

**Bankruptcy No. 95–16912–WCH.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 22, 1996.

Andrew G. Lizotte, Hanify & King, Boston MA, for State Street Bank and Trust Company.

John O. Desmond, Chapter 7 Trustee, Framingham MA.

## DECISION ON MOTION OF STATE STREET BANK AND TRUST COMPANY FOR RELIEF FROM THE AUTOMATIC STAY

WILLIAM C. HILLMAN, Bankruptcy Judge.

State Street Bank and Trust Company (the "Bank") moves for relief from stay in order to continue receiving payments under an agreement with Allen M. Mintz (the "Debtor"), as further discussed below. John O. Desmond, the Chapter 7 Trustee (the "Trustee") opposes the motion, contending that the Bank does not hold a perfected security interest in the claimed collateral. There is no dispute as to the underlying facts. The parties have waived the 30–day requirement of 11 U.S.C. § 362(e).

*The Facts*

The Debtor and his son, Howard Mintz ("Howard"), together hold a 8.33% limited partnership interest in the Win–Sal Crossing Limited Partnership (the "Partnership"). In 1992, the Debtor and Howard entered into a "Collateral Assignment of Partnership Distribution Rights" (the "Assignment") with the Bank to secure the sums due from the Debtor to the Bank under certain notes (the "Notes"). On April 28, 1995 the Bank was awarded a judgment against the Debtor in the amount of $319,127.34 representing the balance due on the Notes.

The operative language of the Assignment is as follows:

"1. *Collateral Assignment.* As security for the complete, faithful and punctual payment and performance of the obligations of the Assignor [Debtor and Howard] under the Notes, the Assignor hereby grants to the Secured Party [the Bank] a security interest in and first lien on, and assigns as collateral to the Secured Party, *all of such Assignor's right to receive distributions from the Partnership* whether in cash or in property and whether during the continuance of or on account of liquidation of the Partnership; and all other of the Assignor's rights to receive proceeds of any kind but none of its obligations contained in the Partnership Agreement including, without limitation, [detail omitted] and all replacements, substitutions, and proceeds of and to all of the foregoing, whether now existing or hereafter arising, including, without limitation, insurance proceeds...." (Emphasis added).

There are no specific provisions in the Assignment concerning the method by which the Bank will exercise its rights upon default. Paragraph 7 permits the Bank "to exercise any and all rights and remedies it may have under this Agreement." Paragraph 8 makes the Bank attorney-in-fact to carry out "the purposes hereof." However, it is specified in the agreement that substituting the Bank for the Debtor and Howard as a limited partner was not within the contemplation of the parties:

"3. *No Partnership Liability; Indemnification.* The within assignment and grant of a security interest is for collateral purposes only, and the Secured Party shall neither by virtue of this Collateral Assignment, by the receipt of distributions from the Partnership or *by the exercise of any of its rights or remedies hereunder* be deemed to be a partner of the Partnership...." (Emphasis added).

In addition to the Assignment, the general partners of the Partnership executed an "Acknowledgment and Consent to Assignment of Partnership Proceeds" (the "Acknowledgment") in which the general partners consented to the Assignment and agreed that

"All payments of any kind on account of the Partnership due to the Assigning Partners [Debtor and Howard] shall be paid to [Bank] at the following address or such other address as [Bank] may from time to time designate in writing: ...."

Financing Statements, Form UCC–1, were filed with the appropriate state and local filing offices, with an attached collateral description tracking the Assignment.

The Partnership did not issue certificates to Debtor or Howard evidencing their interest as limited partners, and there is no provision in the partnership agreement for the issuance of such certificates.

*The Arguments of the Parties and Why They Are Not Helpful*

The Trustee resists the present motion, contending that the Debtor's interest assigned is "of a type commonly dealt with on security exchanges or markets," as that phrase is used in Article 8 of the Uniform Commercial Code ("UCC"), Mass.G.L. c. 106 § 8–102(1)(b)(ii). As a result, says the Trustee, the assigned interest is controlled by Article 8 and the Bank's interest is unperfected, because it sought to perfect by filing under Article 9 rather than as required by Article 8.

The Trustee's first point misses the target. It may be true that a limited partner's interest in a limited partnership falls within the Article 8 definition of a "security" because it is "of a type commonly dealt in on security exchanges or markets", *E.H. Hinds, Inc. v. Coolidge Bank & Trust Co.*, 6 Mass.App. 5,

372 N.E.2d 259, 262 (1978),[1] but there is some question about whether such an interest satisfies all of the requirements of an "uncertificated security" under Article 8. I agree with the California Legislative Committee report that "uncertificated interests in limited partnerships were not clearly excluded or included" from the uniform text of the statute, quoted below. *See Legislative Committee Comment–Assembly 1984 Addition,* Cal.Comm.Code § 8102.[2] I also agree that limited partnership interests are quite capable of being uncertificated securities and that the partnership is quite capable of being deemed an issuer. Jeanne L. Schroeder and David Gray Carlson, *Security Interests Under Article 8 of the Uniform Commercial Code,* 12 Cardozo L.Rev. 557, 666 (1990) ("Schroeder & Carlson"). I need not resolve the question here.[3]

This case does not involve a collateral assignment of a limited partner's interest. The Bank's interest is restricted by the language of its loan documents to what the Bank calls (and I shall hereafter describe as) "distribution rights" flowing from the partnership interest, a fraction of a limited partner's rights.[4] One parallel would be an assignment of rents from real estate as opposed to fee title to the property. Another is the assignment of the proceeds of a letter of credit.[5] The distribution rights must fit under Article 8 on their own two feet, or not.

The Trustee cites a significant number of cases which hold that limited partnership interests are securities for securities regulation purposes. Those decisions do not assist him, even if we were dealing with the limited partnership interest itself. As Judge Joiner points out, the definition of "securities" provided in Article 8 is notably more narrow than the definitions contained in the federal securities laws. *Motobecane America, Ltd. v. Patrick Petroleum Co.,* 600 F.Supp. 1419, 1424 n. 4 (E.D.Mich.1985), *aff'd* 791 F.2d 1248 (6th Cir.1986). While that decision involved the original Article 8, it is fully consistent with the definition of the version currently in force in Massachusetts. Further, as noted in the Official Comments,

> "this definition has no bearing upon whether an interest is a 'security' for purposes of federal securities laws. By the same token the definitions of 'securities' for purposes of those laws has no bearing upon whether an interest is a security within the definition of this Article."

Official Comment 3 to Mass.G.L. c. 106 § 8–102.

The Bank counters, claiming that the interest assigned to it was a general intangible, Mass.G.L. c. 106 § 9–106, and hence it has perfected by filing. It supports its argument with citation to *Newcombe v. Sundara,* 274 Ill.App.3d 590, 211 Ill.Dec. 68, 654 N.E.2d 530 (1995), *appeal denied* 164 Ill.2d 567 (1995) (table).

I am not alone in having difficulty with the reasoning of the court in *Newcombe,*[6] but it

---

**1.** A recent article originating with The New York Times describes the activities of the Chicago Partnership Board which "unveiled a World Wide Web site that carries price and other data for roughly 1,000 of the largest partnerships."

**2.** California added a new element to the definition stating precisely that an uncertificated security is "not a limited partnership interest in a limited partnership." Cal.Comm.Code § 8102(1)(b)(iv). Massachusetts did not.

**3.** The 1994 Revised Article 8, pending but not yet adopted in Massachusetts, makes specific that "an interest in a partnership ... is not a security unless it is dealt in or traded on securities exchanges or in securities markets, its terms expressly provide that it is a security governed by this Article, or it is an investment company security." *Mass.H.B. 277, Uniform Commercial Code Revised Article 8* § 8–103(c). The proposed provision is "designed to foreclose interpretive questions that might otherwise be raised by the application of the 'of a type' language ... applied to partnership interests." *Id.,* Official Comment 4.

**4.** I do not agree that "under the Uniform Commercial Code one cannot take an interest in proceeds without also taking an interest in the underlying collateral from which such proceeds are generated." *First City Bank v. Webb Co. (In re Softalk Publishing Co.),* 64 B.R. 523, 526 (9th Cir. BAP 1986), *aff'd* 856 F.2d 1328 (9th Cir. 1988).

**5.** Mass. G.L. c. 106 § 5–116(2). Interestingly, the cited section specifically makes the assigned interest an "account."

**6.** *See* Edwin E. Smith, *Security Interests in Limited Partnership Interests: Some Recent Developments,* ABA Commercial Law Newsletter 4, 6 (February, 1996).

(and *Motobecane,* also relied upon by the Bank) is distinguishable on the basic fact that they both involve the pledge of the partnership interest itself and not an income stream derived therefrom. The Bank's other citations which would make an analogy to professional corporations or cooperatives are inapposite; those entities differ significantly from limited partnerships.

### Article 8 or Article 9?

Lacking any stare decisis crutch on which to lean, I shall utilize the last resort and read the statute.

■ To be an interest within the scope of Article 8, the rights subject to the Assignment must involve a "security", which may be a "certificated security" or an "uncertificated security". Mass.G.L. c. 106 § 8–102(1). The initial distinction between the two is that a certificated security is "represented by an instrument in bearer or registered form" and an uncertificated security is "not represented by an instrument". Mass.G.L. c. 106 §§ 8–102(1)(a)(i), 8–102(1)(b)(i).

Are the distribution rights represented by an instrument? Neither the Article 3 nor Article 9 definitions of "instrument" are applicable as each is confined to its own article. Mass.G.L. c. 106 §§ 3–102(1)(e), 9–105(1)(i). There is no definition in Article 8. At common law an "instrument" was a written instrument. *Black's Law Dictionary* 801 (6th ed. 1990). There is no reason to believe that the rule has changed. Since there is no written instrument that represents the distribution rights, the issue of bearer or registered form is moot. The interest which the distribution rights represent will be governed by Article 8 only if it falls within the definition of an uncertificated security.

The full definition of that class provides:

"(b) An 'uncertificated security' is a share, participation, or other interest in property or an enterprise of the issuer or an obligation of the issuer which is

(i) not represented by an instrument and the transfer of which is registered upon books maintained for that purpose by or on behalf of the issuer;

(ii) of a type commonly dealt in on securities exchanges or markets; and

(iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations."

Mass.G.L. c. 106 § 8–102(1)(b).

The distribution rights are some kind of interest in property of the partnership, which satisfies the introductory language of the definition. Certainly the distribution rights are not utterly dissimilar from other products commonly dealt in on securities exchanges or markets and I note from the limited partnership agreement that there is a class of limited partners, thus satisfying elements (ii) and (iii) of the definition.

This leaves one last issue to be resolved— is the transfer of the distribution rights registered with the partnership in books maintained for that purpose? The question of what constitutes an appropriate registry has been described as "perplexing" and the answer as "simply unknown." Schroeder & Carlson, *supra,* at 667. Judge Rhodes has held that the plain language of the registration requirement "implies that the issuer must take some kind of action in writing rather than merely filing a document prepared by the assignor." *Witherell Corp. v. Turnbull (In re Witherell Corp.),* 146 B.R. 715 (Bankr.E.D.Mich.1992). I agree that something more than the Acknowledgment, the only evidence of record that the Partnership recognized the Assignment, is necessary to constitute a register. Lacking a means of registration, the distribution rights are not uncertificated securities and not subject to the rules of Article 8 as to perfection of a security interest.

### Compliance with Article 9 Formalities

■ Having held that the distribution rights are not within the scope of Article 8, a security interest in them must be regulated by Article 9. The only possible Article 9 classification applicable to the distribution rights is "general intangibles." Mass.G.L. c. 106 § 9–106. *See Charter First Mortgage, Inc. v. Oregon Bank (In re Charter First Mortgage, Inc.),* 7 U.C.C. Rep.2d 1644, 1988 WL 391500 (Bankr.D.Ore.1988); *Home Fed-*

*eral Savings & Loan Ass'n v. McDermott & Miller,* 234 Neb. 11, 449 N.W.2d 12, 15 (1989); Barclay Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 2.04[3] (Rev. ed. 1993). Article 9 security interests in general intangibles must be perfected by filing. Mass.G.L. c. 106 § 9–302. *See City of Arkansas City v. Anderson,* 242 Kan. 875, 752 P.2d 673, 680 (1988). The Bank properly perfected its security interest by filing.[7]

### The 552(b) Issue

■ Neither the Bank nor the Trustee mentioned 11 U.S.C. § 552 in their papers, but I cannot avoid doing so.

The first subpart of that section provides:

"(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."

The Bank wishes to continue receiving payments which will be payable to the Debtor after the commencement of the case. Unless there is some applicable exception in § 552(b), the Bank's rights resulting from the security agreement will not reach the future distributions. *New Hampshire Business Development Corp. v. Cross Baking Co. (In re Cross Baking Co.),* 818 F.2d 1027, 1029 (1st Cir.1987).

The relevant portion of § 552(b) reads:

"(b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such *proceeds, product, offspring, or profits acquired by the estate after the commencement of the case* to the

extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders, otherwise." (Emphasis added).

A careful step-by-step analysis of this provision is essential.

The Debtor and the Bank entered into a pre-petition security agreement which does extend to property that the Debtor acquired before the commencement of the case, the right to the potential income deriving from the partnership interest.

■ The next issue is whether distributions made by the Partnership are "proceeds, product, offspring, or profits . . . to the extent provided by applicable nonbankruptcy law" of the distribution rights. An understanding of the meaning of "proceeds" is the first requirement.

The legislative history of § 552 states precisely that

"the term 'proceeds' is not limited to the technical definition of that term in the UCC, but covers any property into which property subject to the security interest is converted."

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 377 (1977); U.S.Code Cong. & Admin.News 1978, p. 5787, 5963, 6333.

That reading has been accepted by some courts. *See James Cable Partners, L.P. v. Citibank (In re James Cable Partners, L.P.),* 141 B.R. 772, 775–776 (Bankr.M.D.Ga.1992); cases collected at 4 *Collier on Bankruptcy* ¶ 552.02 n. 6.

I believe, however, that the preferable position is that taken by the Fourth Circuit Court of Appeals:

"We encounter difficulties in construing the Bankruptcy Code, because Section 552(b) fails to establish the parameters of 'proceeds.' Two interpretations are possible. One infers from the absence of a Code definition and from Section 552(b)'s language limiting any security interest 'to

---

7. I need not decide if the interest was also perfected by the notice to the Partnership. *See* Mass.G.L. c. 106 § 9–305; *Lowe v. Sheinfeld,*

*Maley & Kay, P.C. (In re Saunders),* 155 B.R. 405 (Bankr.W.D.Tex.1993).

the extent provided by ... applicable non-bankruptcy law' that Congress intended to defer to state law, *i.e.,* to the UCC. *See 4 Collier on Bankruptcy* ¶ 552.02 at 552–11 (8th Ed.1989) The other interpretation relies primarily on the legislative history [as quoted above]. This view encourages a broader coverage of proceeds than in the UCC. See, e.g., *2 Norton Bankr.L. and Prac.* § 38.03 at 38–2 (1981) (proceeds includes "property into which the prepetition property is converted, property derived from the prepetition property, and income from the prepetition property that is acquired by the estate after commencement of the case."). However, we believe that Section 552(b)'s express reference to 'non-bankruptcy law' should take priority over a vague and isolated piece of legislative history. We also note that the judicial creation of a definition for "proceeds," broader post-petition than pre-petition, would produce arbitrary and potentially inequitable results. As a result, we hold that the UCC's definition and treatment of proceeds applies to Section 552 of the Bankruptcy Code."

*Unsecured Creditors Committee v. Marepcon Financial Corp. (In re Bumper Sales, Inc.),* 907 F.2d 1430, 1437 (4th Cir.1990). *See also In re Ed Woods Livestock, Inc.,* 172 B.R. 294, 296 (Bankr.D.Neb.1994); cases collected at 4 *Collier on Bankruptcy* ¶ 552.02 n. 5.

Having reached the conclusion that the definition of proceeds is a state law issue, I find the cases under the UCC to be quite conservative in their approach. The prevailing view is found in *Federal Deposit Insurance Corp. v. Hastie (In re Hastie),* 2 F.3d 1042 (10th Cir.1993). The collateral was corporate stock "including ... all dividends, distributions, accounts, contract rights, voting rights and general intangibles relating to and/or due from" the issuers of the stock. The issue was whether cash dividends paid to the debtor post-petition were proceeds of the shares.[8]

The court turned to the definition of "proceeds" in UCC § 9–306(1) which is identical to Mass. G.L. c. 106 § 9–306(1):

" 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds."

It then referred to a legal dictionary and concluded that the operative terms in the definition all describe events "whereby one asset is disposed of and another is acquired as its substitute." 2 F.3d at 1045. It concluded that

"the receipt of cash dividends by a registered owner of certificated securities bears no resemblance to the events specified in the definition of proceeds or to an act of disposition generally,"

but reserved judgment on the issue of liquidating dividends, which was not before it. 2 F.3d at 1046.

■ The position taken by the Tenth Circuit is hardly unreasonable. Looking at all the elements which are included in the definition we find that (1) the future payments are not as a result of the sale or exchange of the distribution rights; (2) "collection" in the UCC context relates to accounts, as in Mass. G.L. c. 106 § 9–502(1), not relevant to the facts before me; and (3) "other disposition" must be limited to the phrases which preceded it, under the principle of *ejusdem generis.*[9] This would appear to be the generally accepted interpretation of "proceeds" in the bankruptcy courts. *See Wolinsky v. Vermont Federal Bank (In re Vermont Knitting Co.),* 111 B.R. 464 (Bankr.D.Vt.1990) (forfeited deposit on aborted sale not proceeds); *Covey v. Ipava State Bank (In re Ladd),* 106 B.R. 174 (Bankr.C.D.Ill.1989) (government disaster payments not proceeds as not result of sale or disposition); *In re S & J Holding Corp.,* 42 B.R. 249 (Bankr.S.D.Fla.1984) (coins deposited in video games not proceeds of the gaming machines); *General Electric Credit Corp. v. Cleary Bros. Construction*

---

**8.** To be an exact parallel to the case at bar, it would have been necessary for a slightly different route to have been taken in *Hastie*——a security interest in the dividends, etc., unaccompanied by a pledge of the stock itself.

**9.** In any event, there has been no "disposition" here; the distribution rights remain as they were before. *See Mechanics National Bank v. Gaucher,* 7 Mass.App.Ct. 143, 146, 386 N.E.2d 1052, 1055 (1979) (disposition implies a permanent transfer of possession).

Co. *(In re Cleary Bros. Construction Co.)*, 9 B.R. 40 (Bankr.S.D.Fla.1980) (rental of collateral does not produce proceeds). *See also* 4 J. White and R. Summers, *Uniform Commercial Code* 287 (4th ed. 1995) ("White & Summers"). I find that the future payments are not "proceeds" as a matter of law.

■ Turning back to § 552(b) itself, I must determine whether the payments to be made will be "product" or "profits" of the distribution rights. I need not be concerned about "offspring."

> The legal dictionary defines "product" as
>
> "With reference to property, term refers to proceeds; yield; income; receipts; return. Goods produced or manufactured, either by natural means, by hand, or with tools, machinery, chemicals, or the like. Something produced naturally or as result of natural process as by generation or growth."

*Black's Law Dictionary* 1209 (6th ed. 1990) (citation omitted).

The overall emphasis of the definition is to physical items originating from other physical items, rather than intangibles such as an income stream from a limited partnership interest. I find that "product" is inapplicable.

■ The dictionary is not particularly helpful for present purposes when we consider the definition of "profit":

> "Most commonly, the gross proceeds of a business transaction less the costs of the transaction; *i.e.*, net proceeds. Excess of revenues over expenses for a transaction; sometimes used synonymously with net income for the period. Gain realized from business or investment over and above expenditures.
>
> "Profit means accession of good, valuable results, useful consequences, avail, gain, as an office of profit, excess of returns over expenditures or excess of income over expenditure.
>
> "The benefit, advantage or pecuniary gain accruing to the owner or occupant of land from its actual use; as in the familiar

phrase 'rents, issues and profits,' or in the expression 'mesne profits.'

> A division sometimes made of incorporeal hereditaments. Profits are divided into *profits à prendre* and *profits à rendre (q.v.)*."

*Black's Law Dictionary* 1211 (6th ed. 1990) (citation omitted).

The fact that Congress removed "rents" from the sentence in 1994, moving that concept to the new § 552(b)(2), but left "profits" in place, *Bankruptcy Reform Act of 1994*, P.L. No. 103–394 § 214, indicates that "profits" may relate to personal property. But even having reached that conclusion I must find that the distribution rights go beyond any reasonable concept of non-realty "profits." The collateral description in the Agreement, it will be recalled, is

> "... all of such Assignor's right to receive distributions from the Partnership whether in cash or in property and whether during the continuance of or on account of liquidation of the Partnership; and all other of the Assignor's rights to receive proceeds of any kind...."

A distribution of the net cash flow of the Partnership might or might not represent profits for accounting purposes or for tax purposes. The language of the Agreement is not dependent upon whether or not a distribution is or is not the net of income over expense. I find that the distribution rights are not "profits" within the meaning of § 552(b)(1).

> *We shall not cease from exploration*
>
> *And the end of all our exploring*
>
> *Will be to arrive where we started*
>
> *And know the place for the first time.*[10]

I conclude that amounts paid after the commencement of the case are not proceeds, products, offspring, or products of property acquired by the debtor before the commencement of the case. As a result, they are subject to the rule of § 552(a) and not subject to the security interest in favor of the

---

**10.** T.S. Eliot, *Four Quartets, Little Gidding V.*

Bank. The motion for relief from stay must be denied.

And it is so ordered.